310-0339 State Farm Fire & Casualty Company, Appalachian-Allen Green, v. Reginald Hutchins, et al., Appellants A. and Leo Wiggins. Mr. Wiggins, you may proceed. Thank you, Madam. May it please the Court, Appellants, Mr. Klayman, Associate, Ms. Shulman. Excuse me, you'd like to come up here, Mr. Wiggins. I was observant of the last proceedings. Oh, okay. I think I understand. I wasn't here. And then the mic there is for recording purposes as well, because we record. All right, Justice. Can you hear me okay? Oh, yes. Don't worry about that. It picks up very well. The Appellant comes in today to seek review and reversal of the demand of orders of the lower court in this case involving a 14-year-old boy who was struck by an underinsured motorist. Reginald Hutchins was 14 years old on the date of the occurrence. He had about $200,000 in medicals. He went into a coma. He came out of it and made a pretty good recovery after about a month that he was comatose. At the outset, I would like to speak about the motion that was filed on February 4th of this year to submit additional authority. We did file a motion that accompanied it, and we did receive a response from the defense. We believe that the case is instructive for your honors in as much as the Rahm Emanuel sufficiency in his application for candidacy for mayor of the city of Chicago was at stake. But the important thing in terms of what the holding was in that case was that they tried to determine what actually reside means, and it actually came out to be a question of question begging. But it's very instructive on the issue of when you come up with these terms of arts like resides primarily in the case at bar. If you want to file, then this is where the problem arises. The insurance policy that was issued in this case by State Farm covered Reginald's grandparents, whom he had lived with from the time that he was an infant born until he was nearly a year old, at which point his mother relocated to another state. That was for about a three-year period, at which point he returned to his grandparents' house. He never left his grandparents' house. He always had a room. He always had clothes. He always had belongings. And his direct testimony on deposition was that, yes, I stayed with my, primarily on the date that I was injured, stayed with my grandparents because my mother was trying to get her house together. The mother had moved into Chicago, and there was some talk, and one of the things that the lower court decided on cross-summary judgment motions that were decided in the plaintiff's favor and against Reginald was that the boy's intent was that he reside in the future in Chicago. And we submit to this panel that that is not the law in Illinois, that his future intent would not be material and relevant to the claim that was made on the day of his injury, which was June 14, 2003. You have to look at the day of the accident, and when you look at the day of the accident, if it's stopped there, we're fine with it, but we don't know that that's reasonable. And we pointed out some of the cases to you that said, by metaphor, if a woman is insured by her mother and she's in college and she's contemplating getting married, but at that point where she's injured and the policy comes into play, she's still residing with her parents. Is her intent going to destroy coverage for her from the injuries she sustains and that should be covered by her policy? Your metaphor is a little bit different than the facts that we have here in that the grandparents weren't necessarily the legal guardian of this minor, and your metaphor is parent-child. They were never the legal guardian, and those papers are there. This boy had no control over that, nor did we concede, nor did the grandparents ever claim him on their taxes. That was something that happened between them, but the boy never ceased to reside with his grandmother. So what we're forced to determine here is, despite the trial court's finding, at least the inference that I think is reasonable from her finding in her written order on summary judgments, was that he didn't comply with the requirements of the Algebrai case, the Cincinnati insurance case, which came out of this district, inasmuch as what his intent was. I respectfully have a problem, and if you may indulge me for a second. I had a similar experience, and one of the things that the court hung her hat on or made the decision to turn on was his intent to go to another school. I understand your concern because I share the same concern. I think I know where you're going, and that is, since when do children decide where they should reside? What I'm troubled by in this case is the court did find it was his intent to reside with Grandma and Grandpa. But we have testimony from, or the court found it was the minor's intent to live in Chicago. Right. And so let's assume for a fact that that is true. In this record, we also have deposition testimony from Grandma that says, no, he lived with us. And Mom, who said, no, he lived with Grandma. And so I'm wondering if those three different expressed intents create a question of fact. I'm convinced that they do, Your Honor. And I'm also convinced that it's a question of a tail wagging the dog and a 14-year-old's intent in terms of where he goes to school. I made a play for my dad when my mother wasn't at home about I didn't want to go to the Catholic school anymore. I wanted to go to the public school because there were girls there. And I screamed up a cry, and my dad, I had him going. Mom got home from the store and said, what's going on? What's happening? He wants to go to McKinley, which was a local public school. Oh, that's not going to happen. She went and put up her groceries. And it was just that quick. So I'm troubled that we're going to give that much deference to the wishes and whims of a 14-year-old, as Your Honor has pointed out. Isn't the issue on summary judgment whether the material facts are undisputed? And here, it appears that the minor's intent perhaps conflicted with Grandma and Mother's intent. And wasn't the trial court really resolving the credibility of those witnesses? She was resolving. They were resolving the credibility of the witnesses, but they were invading the province of the jury because there was a jury demand that was filed in this case when State Farm brought this action. So it wasn't for the trial court to decide. We didn't invite the, you know, sometimes when you do cross motions, you're inviting the court to make a finding substantively about the facts in the case. But that's not the order in which we filed. We filed first. Ours is based on construction of the insurance policy. We think that there are ample facts when you take in totality the boy's life because all but for three years, he lived with these grandparents. After all of this happened, he went through rehab. He had homeschooling in Chicago. He returned back to Bolingbrook. And then his grandfather died, his step-granddad died, who was Artis Williams, who was also the name insured. Then his grandmother relocated, and that was the end of the story. His testimony at deposition was, yeah, I was stuck with my moms because my grandmother moved after my grandfather left. Even if you go to what his intent was, the schools that he wanted to go to were selective enrollment schools. The general enrollment school, as we pointed out by footnote, was Marshall. He wasn't going to get in that school. It didn't look like it because he didn't have the grades he needed to get in. They don't let everybody in. They're looking for achieving students, and unfortunately, this boy didn't have that. So you take the testimony of a 14-year-old boy who was traumatically brain injured, and you rely on his testimony four years, three, four years later, which is, I suppose, that's what the court deemed was appropriate. But when you really read carefully Artebrite, Artebrite says you got to look at the actions. His actions, as well as his direct testimony, indicated that I lived with my grandma. He always lived there. He always had a room. He never left. His mother left, but he never left that residence. I'm wondering if part of the relevant inquiry is whether a 14-year-old can even have the kind of intent that's contemplated by the cases. He can express a desire or a preference, but the kind of intent that's dispositive here is somebody else's decision. He can't make that decision, so I don't think that his expression of intent is the kind of intent that the cases are contemplating. Because everywhere else, and even when you, you know, I may be getting ahead of myself, Your Honors, but in their response, State Farm brings up cases from Alabama and Louisiana, and what those cases really do is crystallize one of the concerns that we've always raised all the way from the beginning of this case, and that has to do with the totality of this boy's life would be a reasonable interpretation of that language when it says, quote, resides primarily. Because when you look at the definitions of it that weren't provided in the policy, they were only provided in dictionaries in blacks or in general dictionaries like Webster's, it means chiefly, it means first in time, he fits all of those tests. He was first with his grandparents. Chiefly, the majority of his life was overwhelming with his grandparents. And when you get down to his eighth grade year, when he was in school and enrolled in school in Chicago, his testimony was, I was back and forth just like I was before when he was at the previous school. So the mother actually worked a 40-hour job. Now, there's some footnote that State Farm raised about it being a 30 hours based on her job application, but that could have changed. That doesn't make her testimony incredible because an application when she starts to work for Speedway out in Bolingbrook, the Speedway service station, she contemplated 25 to 30 hours a week. They offered her more time. He was always staying with his grandparents every weekend and even during the week. So when you get down to the quantitative analysis, it's not question begging. It's not, as State Farm points out, that we're just stretching and convoluting these facts and torturately trying to come up with coverage. We didn't draft the policy. State Farm has lawyers that can draft a policy that's clear. When you get down to what the U.S. District Court did and when you get down to what happened in Alabama and Louisiana, they looked at the whole life of these people. They didn't snapshot it because if you snapshot it on the day of, he's supposed to win because he was living at that time with his grandparents. His grandfather drove him into the city to get a haircut so he could go to his eighth grade graduation. Where did he attend eighth grade? He attended eighth grade at a Chicago school. So why do you think that snapshot works? The snapshot works because as the testimony of one of the adjusters who handled his file was, when I asked her, so what does residence mean to you? The date, where you live on a daily occurrence. Well, in that case, on that analysis. All right. Not where you attend school, but where you actually live. Right. Because even though he attended school in Chicago, most of his residing was still with his grandmother. It always was, except for when they lived in Kansas City, Missouri. If we were to revisit the antidote that I questioned you on earlier and combine it with the decision involving Mr. Emanuel, for example, if Mr. Emanuel had a 14-year-old son that intended to remain in Washington with uncle or an aunt, do you think that his residence would be Washington or primary residence would be Chicago? And that follows up on Justice McDay's question. Since when does the law allow a 14-year-old to state an intent to reside primarily anywhere? We're in trouble when we start to do that. I respectfully submit that we're on a slippery slope because we're already letting children make decisions in juvenile court, where I worked for six years. We're already making, and I understand, decisions that allow a 14-year-old. I think that's the age of reasoning when a child can express a desire to live with one parent in the custody fight as opposed to another. I believe that's quite relevant. With a 14-year-old saying, I want to go to school here, these folks, the Williams and his mom, Latonya Johnson, had always tried to afford him a life in the best areas they could. They first lived in Broadview, and after that, the grandmother and the step-grandfather bought a house out in Bolingbrook, and they lived there. He's always lived there. So the notion that for this eight-month period between, I think it was July when the mother's Section 8 application was approved, and I believe she received an apartment on Laverne Street on the west side of Chicago, even during that period of time, he never abandoned that residence. And the other thing from the Macklin case, thank you, was that they said once someone shows he's a resident, the burden then shifts to someone to show that they've abandoned or terminated that residence. There's nothing in the record to support that this boy ever abandoned, either because of the acts of his parents, his grandparents. No one changes living conditions. Thank you. Thank you, Mr. Wiggins. Ms. Green, you may respond. Good afternoon. My name is Ellen Green for State Farm Fire and Casualty Company. May it please the Court. The question here is a question of law, and we submit that the trial court properly held that Reginald Hutchins was not entitled to underinsured motorist coverage under an automobile policy that was issued to his grandparents on the grounds that he was not an insured because he did not reside primarily with the Williams based on the undisputed facts. What does that mean, resides primarily? As the trial court viewed it and how many courts across the country have interpreted the word primarily to mean chiefly, principally, mainly, but it's not a word that can be decided in a vacuum, but yet that doesn't mean that, and it's not defined in the policy, but that doesn't mean the word has no meaning. But does it require a timeframe? As it's written in the policy, it's written in the present tense, so it's not something in the past, where did you reside? Also, Illinois case law interprets insurance policies in a similar type cases, in uninsured motorist cases, the coverage is to be determined at the time of the accident creating the potential liability. So you would interpret it as where did you reside primarily at the time of the accident. Is it a quantitative analysis? I think quantitative can be, you can look at a big picture and consider that as a factor of the time spent in a certain location, but it's not dispositive. Let's say there's somebody who has a family who lives in North Carolina, they have a job in Chicago, maybe they come here five days to work, but they may consider their primary residence to be in North Carolina with their family. Well, before we get into this issue, I think both my colleagues have addressed this, is what they consider. What is a factor with a 14-year-old? Do we even concern ourselves with what they consider? As far as the Hutchins. They can't rent, they can't vote, they can't fight a war. Intent is one of the factors that Illinois courts look at when they're determining whether somebody resides somewhere. But when you add the term resides primarily, you can only reside primarily in one spot. And I think any reasonable person. Let's say, for example, we get rid of this idea of imbuing minors with intents. Do you win or lose if we do a quantitative analysis? What location was Reginald, not the day of the incident, the year prior to it, 365 days before? His primary residence was with his mother in Chicago. He was in school, as far as we know, pretty much five days a week. I'm not sure what his testimony was as to the number of days he missed that year, but he managed to attend eighth grade at Nash Elementary School in Chicago. Also, his mother, Latonya Johnson, had sole custody of Reginald. There's a lot of cases, constrained resides where there's joint custody arrangements. Let's stay with the empirical thing. It's something new to the law, but location. Where is this child located? Not custody or anything else. Physical, on this planet, at a space. Where was that child? The child was attending school at Nash Elementary in Chicago. He managed to make it to school five days a week. He testified he would get up, he would go to school, he would come home, hang out, play with his friends, that his mother would cook him dinner, that he would do his homework. And if he didn't get his homework done, he'd get up early in the morning and do his homework. At most, they have testimony that he would go to his grandmother's house in Bolingbrook on the weekends. There's also testimony that he would go there when his mother had to work at a gas station that apparently was out near Bolingbrook, and that he would go along and stay with his grandparents. It's not even clear if he spent the night there. But since he was attending school, he would have been in Chicago with his mother, who claimed him as a dependent on her tax return. But those are all facts. Those are all facts. They are facts, and they're undisputed facts that all go toward establishing that this was the primary residence and that even the adults in his life saw that his Chicago address, his domicile with his mother, was where he primarily resided. Isn't it also undisputed that the minor in his deposition testimony said there was no reason to move to Chicago? He was living back and forth like I was when I was going to Nash Elementary. I had no reason to move to Chicago is what he testified to. I'm not sure in what context when he was moving to Chicago when you said there's no need, but that's because he did end up back in Bolingbrook after the accident, after attending Austin High School for a period of time when he was in rehabilitation. But that's after the accident. Yes. So you're willing to look at where he lived after the accident but not before? No, but he testified that at the time of the accident he was asked a direct question, where did you live? You want to limit our consideration to when he was in the eighth grade? Yes. Okay. Where in either your policy or your complaint do you define the relevant period for us to look at or for the trial court to look at to determine what the primary residence was? It's not defined. It is determined as a matter of law that a time of the loss is the relevant time frame when you're looking at- The time of what? The loss, the accident. The time of the accident. Yes, which was June 14, 2003. That's when you make the determination as of. Yes, there's another case where somebody had a spouse and they wanted to get coverage for the spouse. But he got married a couple weeks after the accident. It was still within the policy period, but they only take a picture. You know, when this loss occurred and there was this accident, was this person married to the insured? And she was not. And this is a similar type situation. Where was his primary residence on June 14, 2003? I don't think it's a similar question at all because primary suggests that there are other residences which suggest that one day can't be the applicable period. There has to be some sort of a time range or time frame. And that the determination of primary residence is made at the time of the accident. But whether or not he resided someplace primarily is not limited to the day of the accident. I agree with your interpretation that you can look, you know, at the circumstances surrounding it and things that happened before and after to sort of get a picture. Well, just put it before, to put it in context, and other courts do that. But there can only be one residence. And we're not disputing that his grandmother's house could be a residence and that perhaps he always kept a room there. It was a residence for him for most of his life. But in eighth grade, what was his primary residence? There can only be one. I found it curious. You said at the beginning that this is a question of law. And I would agree that whether one can have only one primary residence perhaps is a question of law. But where this minor's primary residence was, why isn't that a question of fact? Because there are conflicts in the deposition testimony and the exhibits introduced. But the only conflicts are if you're looking at the questions being where, which was his, you know, was this a residence of his? So let's say the grandmother said he lived here. And he says I lived in Chicago. And so the judge has to decide whose residence it is. Both can be correct. He could have a residence in Chicago. He could also have a residence at his grandmother's house at the same time, the same with a child who has divorced parents and spends every other weekend with his stepdad. You can have two residences. You're saying that the judge as a matter of law then determines which one is primary. In this case, it was proper based on the undisputed facts because it's the only reasonable conclusion that could be drawn. Based on the facts that are in the record, it's not reasonable to conclude that his grandparents' house in Bolingbrook was his primary residence when he attended school in Chicago, that he was in Section 8 housing with his mother. So back to my original coming full circle, that to determine as a matter of law primary, it becomes quantitative, right? You're telling me that, okay, we have evidence that he resided here, he resided here. The judge has to determine what it was the primary residence, correct? Yes. How does the judge do that? What factors are considered? It's the same factors that are considered in residency, intent, permanency of abode, physical presence, with intent being a controlling factor, but I would concede that when you're dealing with a minor, a minor's intent may not be as significant as it would be with an adult. What if the judge determined this is a 14-year-old boy, and I'm going to make the determination about his primary residence based on where he lived the most during that entire 14-year period? You haven't put anything either in your complaint or in the policy that would preclude him from doing that or her. I don't think that's under reasonable construction of an insurance policy. I may be now a resident with my 86-year-old mother, but so that just because it's written in an insurance policy doesn't mean it can't just have a plain, ordinary meaning instead of one that an attorney is straining to find. I think most people understand where they primarily reside without, when they haven't offered an alternative reasonable construction as to what that means. Well, most parents understand where their children primarily reside, and the mother testified that he was residing with Grandma. And when he came back to the apartment after his injuries, she had to upgrade the section of housing to get a bigger apartment. So why couldn't the child court consider that and go the other way? She just testified that's where he lived without saying that that was his sole residence. But the grandmother also testified that Reginald lived with her. But again, that goes to there being more than one residence. But I think based on these facts, it was proper for the trial court to determine as a matter of law that the primary residence was, again, with the mother. And there are many other facts. And that was based on a quantitative analysis, presumably. The trial court appeared to base the decision on the boy's intent as being a primary factor. This court is not bound to the reasons for the judgment. I think there are a lot of other factors in the record that we include in our brief, such as the tax returns, the fact that he was enrolled in school there, that he testified that's where he lived, the official documents, the Section 8, where she applied saying that Reginald would live with her, and they were updated yearly in family reports that showed that he was a resident of her household. And in the reply brief, they suggested she lied. His primary residence was in her household or only that he lived there? That he lived there with her. He could live elsewhere primarily. But there's not any other official type documentation in support of finding that the grandmother was a primary resident. Except for grandma's testimony that he attended grade school while living in Bowling. But that was earlier in his life. He also spent some time in Kansas City. In the position testimony, it actually does say Kansas City, Kansas, and there is a Kansas City, Kansas. I know that was another thing they thought we were being deceptive about. But that's not a material fact. Can I go to the tax return issue? Yes. Well, you're just talking about a claim of dependency on the mother's tax return. That's all we're talking about, aren't we? Yes, but that also goes to show that he was dependent upon his mother for his support. It's just another factor. And you have to look at the totality of that. There are a lot of children of divorce who are dependent upon a father who's absent from the home. Well, there's always one fact that could be different in every case. But looking at all the facts here, and in this case, it is a sole custody arrangement. And there's no testimony that the grandmother ever had any sort of legal custody. Well, I don't think it's an issue of custody at all. It's just another factor. All we're talking about with dependency is a support issue of whether you claim this person is your dependent. But I don't know if it goes to where that dependent lives. But he also attended school there. Okay. I think you have to look at all the facts together. In every case, they're going to be different. But I think someone, like a trial judge, can look at all the undisputed facts and make a decision as a matter of law as to which of the residents that are offered is a primary residence. Okay. What's our standard of review here? It's de novo. Okay. Yeah, as to whether, as to the construction of an insurance policy, as to whether the language primarily resides is ambiguous or unambiguous, and whether there are any questions of fact precluding summary judgment in this case. And we submit that it was, it is unambiguous language, excuse me, as every court has held that we've cited there in our brief. They have not cited any cases in which any court found that language to be unambiguous, to be ambiguous, including the Wisconsin case where there were different inferences to be drawn in a case of joint custody. That court even found that the language was unambiguous. It's clearly unambiguous language. What's ambiguous is how it's supposed to be applied in each individual case, and that's fact-specific. Well, then, the question then wouldn't be ambiguity, but whether there's a question of fact in that specific case. In this case, we've got exactly what we have here. But our position is that the only reasonable conclusion is that he primarily resided in Chicago, because you can't just look at him staying there occasionally when his mom's working as that being a primary residence. That's not a reasonable conclusion to be drawn from these facts. When there can only be one residence, it's not just a question of whether that was a residence of the boy. Any more questions? Thank you, Ms. Green. Thank you. Mr. Wiggins, you may reply. I'll make it very brief, Justice. Your Honor, Justice Holdridge asked the counsel for Planned Parenthood about where the boy was living a year before. And our brief and the evidence that was produced in this cause show that the accident, of course, happened in June of 2003. October 19th of 2002 is when the apartment became available. So the answer to the question was, and it was in the briefs, the boy lived a year before the accident with his grandparents. That's not the most important thing that I want to reply to from the responsive argument. The State Farm is now in the position of saying we didn't, the defendants didn't, adduce evidence. And I know this panel is not going to be lured into allowing State Farm to shift any burden. One of the things that we pointed out in our original brief was we didn't have to prove anything in this case. What we did was we filed a motion to dismiss because the first thing we noticed was that what State Farm said was at all relevant times, or at relevant time here too. Then later on, they had filed a first amendment complaint after our motion to dismiss was sustained. They added an S to relevant times. What are relevant times? We don't know that. We showed you the Colonial Inn case, the Lodge case. It said evidence or pleadings without proof is as bad as proofs without pleadings, or vice versa. I just want to leave you with this. Ms. Williams and Mr. Williams didn't buy exclusions when they bought their policy. They bought coverage. The Gillen case versus State Farm is a case to really read carefully in terms of the import. What Gillen says is when you're going to do exclusions, they've got to be specific. They've got to be, they have a three-prong test. I'm forgetting as a standing executive what all three prongs are. But they, State Farm in the Hutchins case, cannot meet that burden because you've got to rely on extrinsic evidence in order to come up with what they mean. You've got to apply an arbitrary time period. If you do that, we win anyway. If you do it on the day of, as their lawyer, I think, just said, and as their adjuster said when she was deposed, if it's the day of the accident, he was living with his grandparents. The boy is supposed to win. The argument that State Farm made considering what someone considers their primary residence, I don't think we can go to what the boy considered. But even if you go to it, his testimony was, we was living on the day of the accident with my grandparents. And my mom was trying to get our house together. So even if you go to that test, it's kind of any port that you go to, the storm doesn't disappear. Thanks very much. What was the date the insurance policy was purchased by Grandma and Grandpa? Your Honor, I don't know. And do we know where the minor was living at the time when they purchased the system? He was living with them, I believe. I actually think I know, but I've got to speculate. That's all right. They had had this policy issued for a while. And I believe that they had the policy from the time that they bought the home and they had the State Farm coverage for the discounts. Thank you. Thank you, Mr. Wiggins. Thank you, Ms. Green. Both for your arguments in this matter this afternoon, it will be taken under advisement.